**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ON DECK CAPITAL, INC. SECURITIES LITIGATION | **Civil Action No. 15 Civ. 6126 (AT)**<br><br>**CORRECTED FIRST AMENDED COMPLAINT FOR VIOLATIONS OFTHE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Carl Stitt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding On Deck Capital, Inc., ("On Deck" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired On Deck securities pursuant and/or traceable to On Deck's false and misleading Registration Statement and Prospectus issued in connection with the Company's December 16, 2014 initial public offering ("IPO"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 11, 12(a)(2), and 15 of the Securities act of 1933 ("1933 Act") against the Company, certain of its officers and directors, and underwriters of the IPO.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o, and rules promulgated thereunder by the SEC.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 22 of the Securities Act, 15 U.S.C. § 77v.

4. Venue is proper in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b). The acts and conduct complained of herein occurred in substantial part in this District, and On Deck is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

**A. Plaintiff**

6. Plaintiff, as set forth in the Certification filed in connection with the motion for appointment as lead plaintiff (Doc. # 30-2), which is incorporated by reference herein, acquired On Deck securities in, or traceable to, the IPO.

**B. Corporate Defendant**

7. Defendant On Deck is a Delaware corporation with its principal executive offices located at 1400 Broadway New York, NY 10018.

**C. Individual Defendants**

8. Defendant Noah Breslow ("Breslow") is, and was at all relevant times, the Company's Chief Executive Officer ("CEO") and a Director of the Company. Breslow signed

and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

9. Defendant Howard Katzenberg ("Katzenberg") is, and was at all relevant times, the Company's Chief Financial Officer ("CFO"). Katzenberg signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

10. The defendants referenced above in ¶¶ 8 and 9 are sometimes referred to herein as the "Officer Defendants."

11. Defendant James Robinson III ("Robinson") is, and was at all relevant times, a Director of the Company. Robinson signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

12. Defendant David Hartwig ("Hartwig") is, and was at all relevant times, a Director of the Company. Hartwig signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

13. Defendant Sandy Miller ("Miller") is, and was at all relevant times, a Director of the Company. Miller signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

14. Defendant Jane J. Thompson ("Thompson") is, and was at all relevant times, a Director of the Company. Thompson signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

15. Defendant Ron Verni ("Verni") is, and was at all relevant times, a Director of the Company. Verni signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

16. Defendant Neil Wolfson ("Wolfson") is, and was at all relevant times, a Director of the Company. Wolfson signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

17. The defendants named in ¶¶ 11-16 above are sometimes referred to herein as the "Director Defendants."

**D. Underwriter Defendants**

18. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as joint lead book-running manager and representative of the underwriters for the Company's IPO, helping to draft and disseminate the offering documents.

19. Defendant Bank of America Merrill Lynch ("BOA") served as joint lead book-running manager and representative of the underwriters for the Company's IPO, helping to draft and disseminate the offering documents.

20. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter and a book-running manager for the Company's IPO, helping to draft and disseminate the offering documents.

21. Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") served as an underwriter and a book-running manager for the Company's IPO, helping to draft and disseminate the offering documents.

22. Defendant Jefferies LLC ("Jefferies") served as an underwriter and a book-running manager for the Company's IPO, helping to draft and disseminate the offering documents.

23. The defendants named in ¶¶ 18-23 above are sometimes referred to herein as the "Underwriter Defendants".

24. Defendant On Deck and the Officer and Director Defendants who signed and/or authorized the signing of the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement. The Underwriter Defendants drafted and disseminated the offering documents and were paid substantial fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who acquired On Deck common stock in and/or traceable to the IPO (the "Class"). Excluded from the Class are Defendants, officers and directors of On Deck, members of the Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. On Deck issued 11,500,000 shares in the IPO. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by On Deck or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether defendants violated the Securities Act;
- whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and
- the extent to which the members of the Class have sustained damages and the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

31. On Deck provides financing products to small businesses in the United States. It offers fixed term loans and revolving line of credit. The company processes and services its loans through its online platform.

32. The Company relied on third-party brokers to bring business to its platform. These brokers were paid a commission to find borrowers for as much as 44% of On Deck's loans.[1] On Deck would approve a borrower for one rate then allow the broker to charge a higher rate and keep

[1] SEC Form S-1/A filed December 15, 2014 at 16.

the difference. The commissions provided incentives to mislead loan applicants, enter false application data, or "engage in other disreputable behavior so as to earn additional commissions on those inaccurate loan applications."[2] Often borrowers cannot tell whom they're borrowing from, or what they'll end up paying. Moreover, some of these brokers On Deck relies on have been previously convicted of insider trading, stock scams, embezzling, gambling, and dealing illegal drugs.

33. On Deck's loans were not processed entirely by software. A number of On Deck employees – credit analysts, underwriters, marketing analysts, and salespersons – were also involved in selling and processing loans.

34. CW1 was a credit analyst from 2011 to 2013. CW1's job was to vet prospective borrowers. According to CW1, the protocol entailed first evaluating the business's credit history; if the business did not qualify then the business owner's personal credit history was examined – and a credit score of only about 500 was sufficient. In CW1's experience, most businesses loan applications were approved.

35. CW2 was employed as a credit analyst from June 2015 to September 2015. CW2 estimated the loan rejection rate at only 20 percent or less.

36. CW3 was an inside sales representative from May 2013 to July 2014. CW3 stated that employees were not as diligent in the loan application process because there was no penalty by On Deck for an employee with a high default rate; performance was judged solely on how many borrowers were signed up.

37. CW4 was an inside direct sales representative from January 2014 to September 2014. According to CW4, it was On Deck's policy to take borrowers at their word and enter stated

[2] SEC Form S-1/A filed December 15, 2014 at 16.

income onto their applications. Some On Deck representatives went a step further and entered a higher income number into the system knowing the business was unlikely to be approved for credit otherwise. CW4 also stated that sales representatives frequently and deliberately entered incorrect information on loan applications to make their sales goals. On Deck's commission system incentivized sales representatives to cheat.

**Provisions for Losses and Charge-offs**

38. On Deck's "provision for loan losses" – money that it expected to lose from bad loans – steadily increased since the IPO. The provision for loan losses for the three months ended September 30, 2014 was $47.0 million (on average, $15.7 million per quarter);[3] for the year ended December 31, 2014, it was $67.4 million (on average, $16.85 million per quarter);[4] and for the three months ended March 31, 2015, it was $23.1 million.[5]

39. Rather than providing a default rate or the amount of delinquent loans in its Registration Statement, the Company provided its "provision rate" in its filings, defined as:

> the provision for loan losses divided by the new originations volume of loans held for investment in a period. Because we reserve for probable credit losses inherent in the portfolio upon origination, this rate is significantly impacted by the period's originations volume. This rate may also be impacted by changes in loss expectations for loans originated prior to the commencement of the period.[6]

The provision rate for the nine months ended September 30, 2014 was 6.6%[7]; for the year ended December 31, 2014, it was 6.6%;[8] and for the three months ended March 31, 2015, it was 7.2%.[9]

40. The Registration Statement did not state what the actual charge-off amount was for bad loans – only that loans were "typically charged off after 90 days of nonpayment" and provided

---

[3] SEC Form S-1/A filed December 15, 2014 at 66.
[4] SEC Form 10-K filed March 10, 2015 at 60.
[5] SEC Form 10-Q filed May 13, 2015 at 29.
[6] SEC Form S-1/A filed December 15, 2014 at 49-50.
[7] SEC Form S-1/A filed December 15, 2014 at 49.
[8] SEC Form 10-K filed March 10, 2015 at 63.
[9] SEC Form 10-Q filed May 13, 2015 at 18.

historical "net charge-off ratios".[10] Subsequent filings made after the Registration Statement did provide figures for actual charge-offs. For the year ended December 31, 2014, the amount of loans charged off was $39.64 million;[11] for the three months ended March 31, 2015, it was $17.864 million.[12]

41. For the year ended December 31, 2014, gross revenue was $158.1 million, and the amount of loans originated was $1.158 billion.[13] Thus the ratio of charge-offs to originations in 2014 was ***3.4%*** ($39.64 million / $1.158 billion), and the ratio of charge-offs to revenue in 2014 was ***25.1%*** ($39.64 million / $158.1 million).

42. For the three months ended March 31, 2015, gross revenue was $56.46 million, and the amount of loans originated was $415.98 million.[14] Thus the ratio of charge-offs to originations in Q1 2015 was ***4.3%*** ($17.864 million / $415.98 million), and the ratio of charge-offs to revenue was ***31.6%*** ($17.864 million / $56.46 million).

**Defendants' Materially False and Misleading Statements Made In Connection with the IPO**

43. On or about December 15, 2014, On Deck filed with the SEC its amended Registration Statement on Form S-1/A, which became effective on December 16, 2014, and would be utilized in the IPO. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

[10] SEC Form S-1/A filed December 15, 2014 at 57-59.
[11] SEC Form 10-K filed March 10, 2015 at 95.
[12] SEC Form 10-Q filed May 13, 2015 at 11.
[13] SEC Form 10-K filed March 10, 2015 at 45, 47.
[14] SEC Form 10-Q filed May 13, 2015 at 18, 30.

44. On December 17, 2014, On Deck filed its Prospectus for the IPO. The Registration Statement and Prospectus (collectively, the "Offering Documents") did not disclose any detailed information with respect to default rates. Rather, the Offering Documents simply stated the following:

> ***Worsening economic conditions may result in decreased demand for our loans, cause our customers' default rates to increase and harm our operating results.***
>
> Uncertainty and negative trends in general economic conditions in the United States and abroad, including significant tightening of credit markets, historically have created a difficult environment for companies in the lending industry. Many factors, including factors that are beyond our control, may have a detrimental impact on our operating performance. These factors include general economic conditions, unemployment levels, energy costs and interest rates, as well as events such as natural disasters, acts of war, terrorism and catastrophes.
>
> Our customers are small businesses. Accordingly, our customers have historically been, and may in the future remain, more likely to be affected or more severely affected than large enterprises by adverse economic conditions. These conditions may result in a decline in the demand for our loans by potential customers or higher default rates by our existing customers. If a customer defaults on a loan payable to us, the loan enters a collections process where our systems and collections teams initiate contact with the customer for payments owed. If a loan is subsequently charged off, we generally sell the loan to a third-party collection agency and receive only a small fraction of the remaining amount payable to us in exchange for this sale.
>
> There can be no assurance that economic conditions will remain favorable for our business or that demand for our loans or default rates by our customers will remain at current levels. Reduced demand for our loans would negatively impact our growth and revenue, while increased default rates by our customers may inhibit our access to capital, hinder the growth of our OnDeck Marketplace and negatively impact our profitability. Furthermore, we have received a large number of applications from potential customers who do not satisfy the requirements for an OnDeck loan. If an insufficient number of qualified small businesses apply for our loans, our growth and revenue could decline.
>
> . . .
>
> ***An increase in customer default rates may reduce our overall profitability and could also affect our ability to attract institutional funding. Further, historical default rates may not be indicative of future results.***

> Customer default rates may be significantly affected by economic downturns or general economic conditions beyond our control and beyond the control of individual customers. In particular, loss rates on customer loans may increase due to factors such as prevailing interest rates, the rate of unemployment, the level of consumer and business confidence, commercial real estate values, the value of the U.S. dollar, energy prices, changes in consumer and business spending, the number of personal bankruptcies, disruptions in the credit markets and other factors. In addition, as of September 30, 2014, approximately 28.3% of our total loans outstanding related to customers with fewer than five years of operating history. While our OnDeck Score is designed to establish that, notwithstanding such limited operating and financial history, customers would be a reasonable credit risk, our loans may nevertheless be expected to have a higher default rate than loans made to customers with more established operating and financial histories. In addition, if default rates reach certain levels, the principal of our securitized notes may be required to be paid down, and we may no longer be able to borrow from our debt facilities to fund future loans. In addition, if customer default rates increase beyond forecast levels, returns for investors in our OnDeck Marketplace program will decline and demand by investors to participate in this program will decrease, each of which will harm our reputation, operating results and profitability.

45. The statements referenced above in ¶ 44 were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results which were known to Defendants and/or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the true rate of default for the Company's loan portfolio was already steadily increasing at that time; and (2) the value of the Company's loan portfolio was already in material decline.

## **<u>POST-IPO</u>**

46. On February 11, 2015, less than two months after the IPO, *SeekingAlpha.com* published an article entitled "On-Deck Capital: Bad Loans, Bad Interest Rates, Bad Business Plan." The article stated, in part:

> **Bad Loans: "About" 6% Losses? How about 25%?**
>
> So how much money is the company losing through defaults of On Deck loans?

> According to a video interview of Mr. Breslow, tens of millions of dollars.
>
> "What is the rate of default?" TheStreet's reporter Dan Freed asked Mr. Breslow.
>
> "So our rates of default are also publicly available on our S-1. We expect to lose about 6 cents for every dollar that we lend," CEO Noah Breslow said in the video interview.
>
> The company's S-1 says that expected rate is 7 cents for every dollar loaned. According to LendingMemo, this compares with rival Lending Club's actual default rate of about 5 percent.
>
> ***But we want a clearer picture of the actual default rate for On Deck. So let's take the actual dollars lost or $26.7 million lost in loans charged-off in the last nine months, and look at that as a percentage of the last nine months' gross revenue of $107.6 million.***
>
> ***That works out to a whopping loan loss of 24.8 percent.***
>
> And filings suggest On Deck is getting ready for even higher losses from defaults.
>
> Indeed, lending companies set aside money they expect to lose from bad loans. So On Deck's "provisions for expected losses" or the reserve through September 2014 rocketed to $47 million. ***That's nearly triple the previous year's.***

(Emphases added.)

47. On March 10, 2015, On Deck filed a report on Form 10-K with the SEC announcing its financial and operating results for the year ended December 31, 2014 (the “2014 10-K). For the year ended December 31, 2014, net loss was $18.7 million, or $0.60 per diluted share on revenue of $158.1 million. The provision for loan losses was $67.4 million. The amount of loans charged off was $39.64 million. The amount of loans originated was $1.158 billion. The total balance of all loans was $490.6 million, of which $430.7 million was non-delinquent, $40.0 million was delinquent/paying, and $19.8 million was delinquent/non-paying.

48. On May 4, 2015, On Deck filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended March 31, 2015 (the “Q1 2015 8-K”). For the quarter, net loss was $5.34 million, or $0.8 per diluted share, on revenue of $56.46 million. The

provision for loan losses was $23.1 million. On this news, On Deck's share price dropped $3.11, or 15.53%, to close at $16.91 on May 5, 2015.

49. On May 13, 2015, On Deck filed a report on Form 10-Q with the SEC announcing its financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"). For the quarter, net loss was $5.34 million, or $0.8 per diluted share, on revenue of $56.46 million. The provision for loan losses was $23.1 million. The amount of loans charged off was $17.864 million. The amount of loans originated was $415.98 million. The total balance of all loans was $542.9 million, of which $472.7 million was non-delinquent, $47.7 million was delinquent/paying, and $22.5 million was delinquent/non-paying.

50. On July 1, 2015, barely six months after the IPO, On Deck common stock dropped to a low of $11.15 per share, a decline of over 40% from the IPO.

51. On August 3, 2015, On Deck filed a report on Form 8-K with the SEC announcing its financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 8-K"). For the quarter, net income was $4.75 million, or $0.07 per diluted share, on revenue of $63.3 million. The provision for loan losses was $15.5 million. The amount of loans charged off was $19.3 million. The amount of loans originated was $419 million. On this news, On Deck's share price dropped $2.91, or 21.75%, to close at $10.47 on August 4, 2015. The stock price also dropped the following day by $1.00, or 9.55%, to close at $9.47 on August 5, 2015.

52. On August 11, 2015, On Deck filed a report on Form 10-Q with the SEC announcing its financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q") repeating the quarterly results and further indicating that the amount of loans originated was $419 million. The total balance of all loans was $503.4 million, of which $440.8 million was non-delinquent, $41.8 million was delinquent/paying, and $20.8 million was delinquent/non-

paying.[15] With this disclosure, investors finally understood the vast default rates that had been obscured in the Offering Documents.

**COUNT I**

**(Against All Defendants for Violation of Section 11 of the Securities Act of 1933)**

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. This Count is brought pursuant to Section 11 of the 1933 Action, 15 U.S.C. §§77k, on behalf of the Class, against all defendants.

55. The Registration Statement for the IPO was materially inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements not misleading, and omitted to state material facts required to be stated therein.

56. Defendants are strictly liable to Plaintiff and other members of the Class for the misstatements and omissions.

57. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

58. By reason of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

59. Plaintiff acquired On Deck common stock traceable to the IPO.

60. Plaintiff and other members of the Class have sustained damages. The value of On Deck stock has declined substantially subsequent to and due to Defendants' violations.

[15] Q2 2015 10-Q at 12.

61. At the time of their purchases of On Deck common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed for the time Plaintiff discovered those facts prior to the disclosures herein. Less than three years has elapsed between the time the shares upon which this Count is brought were offered to the public and the time Plaintiff commenced this action.

**COUNT II**

**(Against All Defendants for Violation of §12(a)(2) of the Securities Act of 1933)**

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. This Count is brought pursuant to Section 12(a)(2) of the Securities Act against all Defendants.

64. Defendants were sellers, offerors, and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus. Defendants issued, caused to be issued, and/or signed the Registration Statement. The Registration Statement contained a Prospectus that was used to induce investors, such as Plaintiff and the other members of the Class, to purchase On Deck common stock.

65. The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and concealed and failed to disclose material facts. The Individual Defendants' actions of solicitation included participating in the preparation of the false and misleading Prospectus. The Company, acting through its employees, agents, and others, solicited such purchases for its personal financial gain through the preparation and dissemination of the Prospectus.

66. The Company, its employees and agents, and the Individual Defendants owed Plaintiff and the other members of the Class a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there were no omissions of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew, or in the exercise of reasonable care by their employees and agents should have known, of the misstatements and omissions contained in the IPO materials, including the Prospectus, as set forth above.

67. Plaintiff and the other members of the Class purchased or otherwise acquired On Deck common stock pursuant to and/or traceable the defective Prospectus. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

68. By reason of the conduct alleged herein, the Defendants violated and/or controlled a person who violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and the other members of the Class who hold On Deck common stock purchased in the IPO have the right to rescind and recover the consideration paid for their On Deck common stock and hereby elect to rescind and tender their On Deck common stock to Defendants in return for the consideration paid for those securities together with interest thereon. Plaintiff and other members of the Class who have sold their On Deck common stock are entitled to rescissory damages.

## COUNT III

### (Against On Deck, the Officer Defendants and the Director Defendants for Violation of §15 of the Securities Act of 1933)

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. This Count is brought pursuant to §15 of the 1933 Act against On Deck, the Officer Defendants and the Director Defendants.

71. The Officer Defendants and the Director Defendants each were control persons of On Deck by virtue of their positions as directors and/or senior officers of On Deck. The Officer Defendants and the Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of On Deck. On Deck controlled the Officer Defendants and the Director Defendants.

72. Defendants each were culpable participants in the violations of the §11 of the 1933 Act alleged in the prior Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 18, 2016

Respectfully submitted,

**POMERANTZ, LLP**

_/s/Tamar A. Weinrib_
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: 312-377-1181
Fax: 312-377-1184

***Attorneys for Plaintiff***